UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HORNER MILLWORK CORP. | : | |
| | : | |
| v. | : | C.A. No. 08-321ML |
| | : | |
| UNITED STATES FIRE INSURANCE COMPANY | : | |
| | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is presently before the Court on a Motion for Summary Judgment (Document No. 13) (the "Motion") filed by Plaintiff Horner Millwork Corp. ("Plaintiff" or "Horner"). Plaintiff moves for summary judgment, pursuant to Fed. R. Civ. P. 56, on its claim for declaratory relief against Defendant United States Fire Insurance Company ("USFIC"). Defendant filed a timely Objection to Plaintiff's Motion. (Document No. 16).

The Motion has been referred to me for preliminary review, findings and recommended disposition. See 28 U.S.C. § 636(b)(1)(B); LR Cv 72. A hearing was held on May 12, 2009. After reviewing the Motion and the Objection, in addition to performing independent research, this Court recommends that Plaintiff's Motion for Summary Judgment (Document No. 13) be GRANTED in part and DENIED in part.

**Statement of Facts**

The facts underlying the instant Motion for Summary Judgment arise out of a state lawsuit (the "Underlying Action") filed by Jeffrey Labelle ("Labelle") in Rhode Island Superior Court alleging various tort claims against Horner and others. At the time of the alleged incident giving rise to the Underlying Action, Labelle was a tenant at an apartment he rented from landlord Joe Park

("Park"). Park had recently replaced the windows in that apartment by contracting with Horner, a supplier/distributor of such windows, who afterward contracted with Paul Masse ("Masse") to install windows manufactured by Kolbe & Kolbe Millwork Co. ("Kolbe").

On March 18, 2004, Labelle was in his apartment on the third floor when he alleges that, as he was attempting to open one of the newly replaced windows, he fell three stories to the ground. Labelle contends that he suffered serious and permanent injuries from the fall. He is seeking compensatory damages from Park, Masse, Horner and Kolbe under various counts of negligence and one count of products liability against Kolbe. Relevant to the instant Motion are Labelle's allegations as to Horner and Kolbe. Count II of Labelle's Complaint states in part, "...Horner installed and/or fabricated, manufactured, designed and/or supplied building materials for the window out of which Plaintiff fell." (Document No. 9-2, ¶ 16.). The Complaint further alleges:

> ...Horner owed the Plaintiff a duty to exercise reasonable care and not distribute a defective window manufactured by Kolbe. Additionally, Horner owed the Plaintiff a duty to exercise reasonable care in the supplying of building materials for the window as well as instructions or warnings for the installation of the window out of which Plaintiff fell.

(Id. ¶ 17). In Count III of the Complaint, Labelle alleges in pertinent part, "in addition to distributing a defective window manufactured by Kolbe, Defendant Horner negligently supplied building materials for the window." (Id. ¶ 22). Finally Count IV of the Complaint alleges, "...Kolbe designed and manufactured the window out of which Plaintiff fell." (Id. ¶ 25).

> ...Kolbe owed the Plaintiff a duty to exercise reasonable care in the design, fabrication and manufacture of the window and in the preparation and distribution of instructions or warnings for the window out of which Plaintiff fell.

(Id. ¶ 26.)

Kolbe had a Commercial General Liability Insurance Policy with USFIC ("the USFIC Policy") that was in effect when the injuries to Labelle occurred. This ultimately triggered USFIC's duty to defend and indemnify Kolbe in the Underlying Action. In addition, the USFIC Policy included a section entitled General Liability Coverage Enhancements for Manufacturers. Within this section was an endorsement entitled Additional Insured Vendors which extends the Policy's coverage to vendors subject to several restrictions. The entirety of Endorsement No. 3 states:

> 3. Additional Insured Vendors
>
> WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization who is a vendor, but only with respect to "bodily injury" or "property damage" arising out of "your product" which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:
>
> 1. The insurance afforded the vendor does not apply to:
>
> a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to the liability for damages that the vendor would have in the absence of the contract or agreement;
>
> b. Any express warranty unauthorized by you;
>
> c. Any physical or chemical change in the product made intentionally by the vendor;
>
> d. Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;
>
> e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business in connection with the distribution or sale of the products;

>    f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;
>
>    g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

Document No. 13-2, p. 5. Horner is seeking declaratory relief that it falls under the "Additional Insured Vendors" clause, and as a result, that USFIC has a duty to defend it in the Underlying Action and indemnify it for any liability incurred as a result of the Underlying Action.

In a Supplemental Memorandum of Law, USFIC pointed out that Horner had an additional insurance policy in effect when the injuries to Labelle occurred. That policy was in effect from December 1, 2003 through December 1, 2004, was issued by Granite State Insurance Company and named Horner as the insured. Both the Granite State Policy and the USFIC Policy include a clause which states:

> This insurance is excess over:
>
>    (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

Document No. 21-2, ¶¶ 3, 7.

In its Supplemental Memorandum, USFIC argues that because the two insurance policies contain identical clauses, they are mutually repugnant and unenforceable under Rhode Island law. USFIC therefore claims that any loss would be shared pro-rata between USFIC and Granite State. Horner argues that there is no conflict with the excess insurance clauses, since Horner is only a named insured in the Granite State policy, and an "additional insured" under the USFIC policy.

**Standard of Review**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the pertinent evidence is such that a rational fact finder could render a verdict in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (citing Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Nat'l Amusements, 43 F.3d at 735. Once the movant has made the requisite showing, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

**Discussion**

    **A.    The Granite State Policy**

In response to a Request for Production of Documents, Plaintiff identified Granite State Insurance Company policy number 12-LX-6341701-4/000 as a policy which was in effect from December 1, 2003 through December 1, 2004. (Document No. 21-2, ¶ 5). USFIC supplemented its Statement of Facts and submitted a Supplemental Memorandum of Law arguing that both the USFIC Policy and the Granite State Policy contain identical "excess insurance" clauses. USFIC argued that even if the USFIC Policy was found to cover the loss claimed by Labelle, Granite State would share the loss with USFIC on a pro-rata basis under Rhode Island law. Document No. 21-4,

pp. 2-3 (citing Hindson v. Allstate Ins. Co., 694 A.2d 682, 685 (R.I. 1997) (conflicting other insurance clauses are deemed "mutually repugnant" and thus unenforceable). A comparison of the two policies' excess insurance clauses plainly reveals that the clauses are identical. Both clauses state that the insurance will be excess over, "[a]ny other primary insurance available to you...for which you have been added as an additional insured by attachment of an endorsement." (Document No. 21-2, ¶¶ 3, 7). In the context of the Granite State Policy, this clause indicates that the Granite State Policy is excess if Horner is added as an additional insured by endorsement in another insurance policy. Horner is added as an additional insured by way of an endorsement to the USFIC Policy. Therefore, the Granite State Policy, by its terms, becomes excess over the USFIC Policy.

The clauses are not "mutually repugnant" because there is no conflict when reading the excess insurance clause in the context of the USFIC Policy. Horner is not added as an additional insured by way of attachment of an endorsement to the Granite State Policy because Horner is the named insured in that policy. Therefore, the excess insurance clause of the USFIC Policy is rendered inapplicable. There is no conflict between the excess insurance clauses because the wording is identical and makes each insurance policy excess to the extent that Horner is named as an additional insured by attachment of an endorsement on another policy. Horner is only named as an additional insured by attachment of an endorsement on the USFIC Policy. This result effectuates the intent of the "additional insured" provision in the USFIC Policy to provide primary coverage to a vendor as a named insured.

  **B.**  **Duty to Defend**

"Under Rhode Island law, an insurer's duty to defend is broader than its duty to indemnify." Employers Mut. Cas. Co. v. PIC Contractors, Inc., 24 F. Supp. 2d 212, 215 (D.R.I. 1998). Rhode Island applies the "pleadings test" in determining a duty to defend. Progressive Cas. Ins. Co. v. Narragansett Auto Sales, 764 A.2d 722, 724 (R.I. 2001). "Under the pleadings test, the insurer's duty to defend is ascertained by laying the complaint 'alongside the policy; if the allegations in the complaint fall within the risk insured against in the policy, the insurer is said to be duty-bound to provide a defense for the insured.'" Emhart Indus., Inc. v. Home Ins. Co., 515 F. Supp. 2d 228, 236 (D.R.I. 2007) (quoting Employers' Fire Ins. Co. v. Beals, 240 A.2d 397, 402 (R.I. 1968)). "[I]n other words, when a complaint contains a statement of facts which bring the case within or potentially within the risk coverage of the policy, the insurer has an unequivocal duty to defend." Id. (quoting Beals, 240 A.2d at 403). Further, a "reasonableness requirement is implicit in the pleadings test" in order to defeat attempts to "'plead to coverage' by characterizing a claim as something other than what is described in the complaint's factual allegations." Narragansett Jewelry Co., Inc. v. St. Paul Fire & Marine Ins. Co., 526 F. Supp. 2d 245, 249 (D.R.I. 2007). See also Peerless Ins. Co. v. Viegas, 667 A.2d 785, 789 (R.I. 1995) ("A plaintiff, by describing his or her cat to be a dog, cannot simply by that descriptive designation cause the cat to bark."). Finally, "[a]ny doubts as to whether the complaint alleges an event covered under the policy must be resolved in favor of the insured." Narragansett Jewelry, supra, at 248.

The application of the "pleadings test" requires a determination as to the insurance policy's scope of coverage. Under Rhode Island law, insurance policies are interpreted "according to the same rules of construction governing contracts...." Town of Cumberland v. R.I. Interlocal Risk Mgmt. Trust, Inc., 860 A.2d 1210, 1215 (R.I. 2004). The Courts "look[ ] at the four corners of a

7

policy, viewing it in its entirety, affording its terms their plain, ordinary and usual meaning." Id. If a policy's terms are ambiguous, it must be "strictly construed in favor of the insured...." Id. If a policy's terms are unambiguous, it will be construed and applied as written. Malo v. Aetna Cas. & Sur. Co., 459 A.2d 954, 956 (R.I. 1983). An ambiguity exists when the policy is "reasonably and clearly susceptible to more than one interpretation." W.P. Assocs. v. Forcier, Inc., 637 A.2d 353, 356 (R.I. 1994). However, "the test is not whether there exist alternate meanings but whether there exist reasonable alternate meanings." RGP Dental, Inc. v. Charter Oak Fire Ins. Co., No. 04-445ML, 2005 WL 3003063 at *4 (D.R.I. Nov. 8, 2005) (emphasis in original).

The policy terms at issue in this case are clear and unambiguous. The insurance agreement between Kolbe and USFIC states, "[The Policy] is amended to include as an insured any [1] person or organization who [2] is a vendor, but [3] only with respect to 'bodily injury' or 'property damage' [4] arising out of 'your product' which [5] are distributed or sold in the regular course of the vendor's business...." (Document No. 13-2, p. 5).

Labelle's Complaint in the Underlying Action undoubtedly puts forth facts sufficient to bring his claim against Horner "within or potentially within" the coverage of the USFIC Policy as to Horner. Labelle alleges that "Horner owed the Plaintiff a duty to exercise reasonable care and not distribute a defective window manufactured by Kolbe." (Document No. 9-2, ¶ 17). Labelle's allegations against Horner essentially track the scope of the "Additional Insured Vendors" clause. Horner was the vendor of the windows at issue in the Underlying Action. See Document No. 14, ¶ 4. USFIC does not present any evidence to contradict this fact. Accordingly, the first and second elements of the clause are satisfied. Further, Labelle alleges in Count IV that he suffered physical injuries when the window Kolbe manufactured failed. (Document No. 9-2, ¶¶ 26-27). This

allegation satisfies the third and fourth elements of the clause. The only remaining questions are whether the sale by Horner was carried out in the regular course of business and whether Horner is subject to any of the exclusions in Section II(1)(a-g).

In its Memorandum Opposing Summary Judgment USFIC states "Horner has not established that…such product was sold or distributed in the regular course of Horner's business." (Document No. 16-4, p. 3). USFIC argues that Horner failed to produce a cite to any evidence that proved this fact. At the hearing on the matter, Horner was prepared to supplement its Motion in order to provide evidentiary support for this plain fact. USFIC, however, ultimately agreed to stipulate that Horner sold or distributed the product in the regular course of its business as a millwork company and window/door distributor. Thus, this element is satisfied.

Finally, USFIC claims that Horner falls within an exception to Section II of the Policy. USFIC states "Exclusion 1.f excludes Horner from coverage insofar as liability is predicated on Horner's installation of the window in question, or on Horner's supply of a window or building materials which are not Kolbe products." Id. at 4. This provision only excludes vendors for "Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product." (Document No. 13-2, p. 5). The Complaint, however, alleges only that Horner provided materials to Masse for the installation, not that Horner installed the window or in any way directly assisted with the installation of the window. Though more facts may emerge at trial in the Underlying Action, the "pleadings test" only requires placing the Complaint next to the Policy to determine whether a duty to defend exists. In so doing, the Complaint undeniably alleges that Horner acted as a middleman (i.e., a vendor) who distributed Kolbe's windows to Masse.

In this case, there simply is no genuine issue of material fact as to whether the case falls "within or potentially within the coverage of the policy." Additionally, when determining the coverage of an insurance policy, courts look "not at what the insurer may have intended the policy to cover or exclude, but rather what an ordinary reader of the policy would have understood the policy's terms to mean if he or she had read them." Sanzi v. Shetty, 864 A.2d 614, 620-621 (R.I. 2005). Reviewing the record in the light most favorable to USFIC, it establishes, as a matter of law, that USFIC has a duty to defend Horner in the Underlying Action.

### C. Duty to Indemnify

The duty to indemnify is narrower in scope and distinct from the duty to defend in that the duty to defend is pleadings-dependent, while the duty to indemnify is usually outcome-dependent. See Travelers Ins. Co. v. Waltham Indus. Labs. Corp., 883 F.2d 1092, 1099 (1st Cir. 1989). The outcome of the case is determined upon the entry of a final judgment, settlement or other final resolution. Charter Int'l Oil Co. v. Travelers Cas. & Sur. Co., 558 F. Supp. 2d 209, 212 (D.R.I. 2008). For the insurer, this means it may have to defend a party that it later finds out it did not have an obligation to cover under the policy. See Emhart, 515 F. Supp. 2d at 241.

In light of established case law on this issue, it would be premature for this Court to grant summary judgment as to USFIC's duty to indemnify Horner if Labelle is successful in the Underlying Action against Horner. Though there is no genuine issue of material fact as to whether the Underlying Action potentially falls within the coverage of the Policy as to Horner, the issue of whether the Policy does in fact indemnify Horner is dependent upon a resolution of the Underlying Action. Thus, it would be premature for this Court to grant summary judgment without further findings of fact as to Horner's role in the Underlying Action and liability, if any.

**D.     Production of Documents – Fed. R. Civ. P. 56(f)**

In its Objection, USFIC contended that it could not properly refute the Motion because Horner failed to provide certain documents relevant to the issues presented. However, prior to the hearing on this Motion, Horner ultimately produced the documents at issue. Accordingly, USFIC's argument that it required additional time to respond to Horner's Motion due to Horner's failure to produce certain documents is moot. After receiving such documents, USFIC was granted leave to supplement its Opposition to Horner's Motion and given a fair opportunity to present its arguments.

**Conclusion**

For the reasons stated, I recommend that Plaintiff Horner Millwork Corp.'s Motion for Summary Judgment (Document No. 13) be GRANTED as to USFIC's duty to defend and DENIED as to USFIC's duty to indemnify.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
May 26, 2009